1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   TAMMIE S. BRYANT,

9                      Plaintiff,

10         v.

11   MICHAEL J. ASTRUE, Commissioner of
    Social Security,

12                      Defendant.

13

NO.  C12-5040-RSM-JPD

REPORT AND
RECOMMENDATION

14         Plaintiff Tammie S. Bryant appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied her applications for Disability

16   Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

17   after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18   the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

19                      I.         FACTS AND PROCEDURAL HISTORY

20         At the time of the administrative hearing, plaintiff was a forty-four year old woman

21   with a high school education.  Administrative Record ("AR") at 36-37.  Her past work

22   experience includes employment as a retail sales clerk, mail handler, newspaper deliverer, and

23   a custodian/janitor.  AR at 25-26, 38-42, 58, 131-37.  Plaintiff was last gainfully employed as a

24   retail sales clerk at Walmart in July 2007.  AR at 38-39, 199, 125.

REPORT AND RECOMMENDATION - 1

On August 21, 2008, she filed an application for DIB, alleging an onset date of July 31, 2007.  AR at 35, 108-10.  At the hearing, however, plaintiff amended her alleged onset date to August 26, 2008.  AR at 35.  Plaintiff asserts that she is disabled due to bipolar disorder, high blood pressure, borderline intellectual functioning, and dependent personality disorder.  AR at 19-21, 42-43, 124.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 67-69, 74-75.  Plaintiff requested a hearing which took place on May 21, 2010.  AR at 31-64.  On June 25, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform her past relevant work as a newspaper deliverer or custodian/janitor.  AR at 25-26.  Alternatively, the ALJ found that plaintiff could perform a specific job existing in significant numbers in the national economy, such as a cleaner or basket filler.  AR at 26-27, 123, 129, 155.  After reviewing additional evidence, a brief from plaintiff's attorney, the Appeals Council denied plaintiff's request for review.  AR at 1-7.

On January 17, 2102, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Bryant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

REPORT AND RECOMMENDATION - 3

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

true, then the burden shifts to the Commissioner at step five to show that the claimant can

perform other work that exists in significant numbers in the national economy, taking into

consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

claimant is unable to perform other work, then the claimant is found disabled and benefits may

be awarded.

## V.      DECISION BELOW

On June 25, 2010, the ALJ issued a decision finding the following:

1.      The claimant last met the insured status requirements of the Social
        Security Act on June 30, 2009.

2.      The claimant did not engaged in substantial gainful activity during the
        period from her amended alleged onset date of August 26, 2008,
        through her date last insured of June 30, 2009.

3.      Through the date last insured, the claimant had the following severe
        impairments: bipolar disorder, borderline intellectual functioning, and
        dependent personality disorder.

4.      Through the date last insured, the claimant did not have an impairment
        or combination of impairments that met or medically equaled one of
        the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, I find that, through the
        date last insured, the claimant had the residual functional capacity to
        perform a full range of work at all exertional levels; however,
        regarding mental functionality, the claimant is limited to the
        performance of one to three step tasks.  The claimant will need
        demonstration to learn new tasks.  The claimant is further limited to no
        more than superficial and occasional contact with the general public.
        "Superficial" is defined as not having to respond or attend to the
        demands/requests from the public, but able to direct the public to

appropriate personnel to attend to demand/requests; and the claimant is able to work in the same vicinity or room as the public and greet the public.  "Occasional" is defined as up to one third of the work day.  In addition, the claimant is able to make simple workplace decisions, but will require time off tasks such as a 10 minute break per day in addition to the usual and customary breaks.

6.    Through the date last insured, the claimant was capable of performing past relevant work as a newspaper deliverer and a custodian/janitor. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from July 31, 2007, the alleged onset date, through June 30, 2009, the date last insured.

AR at 19-27.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ provide clear and convincing reasons for her adverse credibility assessment of the plaintiff?

2.    Did the ALJ err in evaluating the other source opinions of Scott MacHaffie, MN, ARNP, and Beverly Geogianna, MN, ARNP?

Dkt. 10 at 1.

## VII.    DISCUSSION

A.    <u>The ALJ Erred in Evaluating Plaintiff's Credibility</u>

*1.    Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R.

REPORT AND RECOMMENDATION - 6

§§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant

produces medical evidence of an underlying impairment, the ALJ may not discredit the

claimant's testimony as to the severity of symptoms solely because they are unsupported by

objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing

that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for

rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what

testimony is not credible and what evidence undermines the claimant's complaints; general

findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

inconsistencies in testimony or between testimony and conduct, daily activities, work record,

and testimony from physicians and third parties concerning the nature, severity, and effect of

the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.

Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found that although plaintiff's medically determinable impairments could

reasonably be expected to cause her alleged symptoms, her statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the ALJ's RFC assessment.  AR at 23.  Specifically, the ALJ asserted that

(1) the record contained insufficient objective medical evidence to support plaintiff's

allegations, (2) plaintiff's mental stability appeared to be dominated by situational stressors,

(3) plaintiff's persistent marijuana use indicates that her symptoms are not solely attributable to

her impairments, and (4) plaintiff made an inconsistent statement regarding the reason she left

her last job.  AR at 23-24.

2.      *Lack of Objective Medical Evidence*

As mentioned above, the ALJ noted that "the record is minimal with

respect to objective testing.  The claimant's treating clinician is a nurse practitioner and his

notes do not include administration of any testing, even a mental status examination, but

appear to include only conclusions based on the claimant's reports and his assumptions about

the claimant's appearance during the appointment."  AR at 23.  The Ninth Circuit has asserted

that although "subjective pain testimony cannot be rejected on the sole ground that it is not

fully corroborated by objective medical evidence, the medical evidence is still a relevant factor

in determining the severity of a claimant's pain and its disabling effects."  *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681

(9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting

pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96–7,

*2–3 (the ALJ "must consider the entire case record, including the objective medical evidence"

in determining credibility, but statements "may not be disregarded solely because they are not

substantiated by objective medical evidence").

Plaintiff does not acknowledge, either in her opening or reply brief, that the ALJ

considered the lack of objective evidence as one reason for finding plaintiff less than credible

in this case.  *See* Dkt. 10 at 11-16; Dkt. 15 at 2-7.  Moreover, the Court finds that the lack of

objective medical evidence in the record to corroborate plaintiff's testimony was a relevant

factor for the ALJ to consider, among others, in assessing plaintiff's credibility.   Thus, the

ALJ did not err by citing this as a reason for discounting plaintiff's credibility.  AR at 23.

As discussed below, however, the other reasons cited by the ALJ for finding plaintiff

less than credible are not clear and convincing.  Without more, the ALJ's adverse credibility

assessment cannot be supported based on a lack of objective medical evidence in the record

that corroborates plaintiff's allegations.  *See Rollins*, 261 F.3d at 857.  Accordingly, this case

must be REMANDED for further proceedings.  On remand, the ALJ must reconsider

plaintiff's credibility, and provide clear and convincing reasons for discounting plaintiff's

testimony if the ALJ still considers plaintiff less than credible.

>    3.    *Correlation between "Situational Stressors" in Plaintiff's Life and Plaintiff's Mental Stability*

As discussed above, the ALJ found that temporary "situational stressors," rather than

psychological symptoms, appear to have primarily affected plaintiff's mental stability.  AR at

23.  For example, the ALJ noted that "throughout most of the relevant period, the claimant

struggled with the calamity caused by four of her adult children.  Both of her boys were

dealing with felony convictions and moving in and out of her household."  AR at 23.  The ALJ

noted that one of plaintiff's sons struggled with mental health issues but refused all treatment,

and another dealt with substance abuse issues of his own.  AR at 23.  The ALJ also observed

that plaintiff's daughters caused her similar stress.  Plaintiff's youngest daughter divorced, and

then moved back in with the plaintiff and began engaging in dangerous activities.  Plaintiff's

eldest daughter frequently left her four children to be cared for by the claimant, and eventually

these children were removed from their mother's care and placed with plaintiff on a more

permanent basis.  AR at 23.  Finally, the ALJ commented that "[i]t was not until late in the

relevant period that the claimant placed these children in daycare for a portion of the day.  It

appears that the claimant did not take advantage of the respite care offered her.  In fact, the

claimant expressed an inclination to become permanent foster parents to these children at the

end of the relevant period, in June 2009."  AR at 23 (citing AR at 422).

Based on the above, the ALJ observed that "these situational stressors correlate with the

claimant's amended alleged onset date and lower Global Assessment of Functioning (GAF)

scores.  This assertion is well supported in the record."  AR at 24.[2]  Specifically, the ALJ

asserted that when plaintiff's four grown children were living in her home in April 2009,

plaintiff's treatment provider recommended that plaintiff and her husband develop a plan to

reduce the chaos in her household, as "this is likely the most important factor contributing to

[plaintiff's] fragility/discomfort at the present time."  AR at 24 (citing AR at 434).  The ALJ

found that by the time three of her four grown children had moved out of plaintiff's home, and

plaintiff was caring for her grandchildren in May 2009, plaintiff's "GAF score increased to 61,

indicating no more than mild symptoms."  AR at 24 (citing AR at 422-25).

    Plaintiff contends that the ALJ relied too heavily on plaintiff's September 2008 opinion

that if she did not have her grown kids living with her, she would be able to work.  Dkt. 10 at

12 (citing AR at 24, 284).  Plaintiff also asserts that her dependent personality disorder, which

the ALJ deemed severe at step two, causes her to be unable to extricate herself from situational

stressors in her life.  As a result, her response to situational stressors should be considered a

symptom of her impairment rather than a reason for rejecting her testimony.  *Id.* at 12-13.

    As mentioned above, the critical issue in a disability case is the claimant's "capacity for

work activity on a regular and continuing basis."  20 C.F.R. § 404.1545(b).  Thus, "[w]here it

is established that the claimant can hold a job for only a short period of time, the claimant is

not capable of substantial gainful activity."  *Gatliff v. Commissioner of Social Security Admin.,*

---

[2] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC
ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
A GAF score falls within a particular 10-point range if either the symptom severity or the level
of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates
"moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty
in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious
symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment
in social, occupational, or school functioning," such as the lack of friends and/or the inability
to keep a job.  *Id.*

172 F.3d 690, 694 (9th Cir. 1999) (no substantial gainful employment where plaintiff is unable to hold a job for more than 2 months at a time).  "Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."  *Lester,* 81 F.3d at 833.

Although the ALJ correctly noted that plaintiff's GAF score increased to 61 in May 2009 after her grown children moved out of her home, which indicates "no more than mild symptoms," the ALJ's insinuation that plaintiff's mental health symptoms remained mild from that point forward due to the absence of these temporary situational stressors is misleading. AR at 24.  Specifically, the ALJ neglects to mention the fact that plaintiff's GAF score decreased approximately one month later and continued to decline.  AR at 419.  In July 2009, plaintiff experienced a hypomanic gambling binge, and reported spending all of her first paycheck from the state at the casino as soon as her grandchildren were in daycare.  AR at 416. Plaintiff's GAF score fell to 55 for a few months and then to 48 in December 2009, and plaintiff reported feeling "very, very stressed" and experiencing "insomnia, severe anxiety, and severe racing thoughts."  AR at 401-02, 404, 407-08, 411, 414.  Plaintiff's GAF remained at 48 from December 2009 through early March 2010.  AR at 389-401.  In late March 2010, plaintiff's GAF fell to 42, and plaintiff's mental health provider noted that the "pronounced exacerbation in [plaintiff's symptoms] seems [related to] situational stressors," although plaintiff possessed "poor insight into the correlation."  AR at 387.  Thus, plaintiff's mental health symptoms did not, as the ALJ suggested, become mild because temporary situational stressors in her life were relieved in May 2009.

Although the Court agrees with the ALJ that the record reflects some exacerbation of plaintiff's mental health symptoms in response to stress, the Court cannot agree with the ALJ's finding that these situational stressors are isolated and sporadic events that have exacerbated plaintiff's mental health symptoms only temporarily.  AR at 23.  On the contrary, the record

suggests a continuum of situational stressors in plaintiff's life which affect her ability to cope

in a way that allows her to work on a regular and continuing basis.  Plaintiff's argument that

chronic situational stressors are typical for her dependent personality disorder, and do not

indicate a lack of credibility on her part, is therefore well-taken.[3]

Accordingly, the ALJ's finding that situational stressors are exacerbating plaintiff's

mental health symptoms "temporarily" is not clear and convincing reason to discount

plaintiff's credibility regarding the intensity, persistence, and limiting effects of her symptoms.

The situational stressors in plaintiff's life appear to be a constant presence affecting her ability

to work on a regular and continuing basis.  On remand, the ALJ should reconsider her opinion

regarding this issue when reassessing plaintiff's credibility.

### 4.   *Marijuana Use*

The ALJ found that plaintiff's "persistent marijuana use, which further impaired her,

indicat[es] that the claimant's symptoms were not solely attributable to the impairments found

above."  AR at 24.  Plaintiff contends that her history of marijuana use is not a clear and

convincing reason for the ALJ reject plaintiff's testimony, because "there is no evidence that

Plaintiff used marijuana after April 2009.  The ALJ did not make any finding that Plaintiff was

untruthful about her use."  Dkt. 10 at 14.

The Court finds that the ALJ raised some valid considerations when she identified

plaintiff's history of marijuana abuse, and the resulting problems.  Plaintiff appears to have

---

[3] For example, according to the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM IV"), an individual with a dependent personality disorder "may go to excessive lengths to obtain nurturance and support from others, even to the point of volunteering for unpleasant tasks if such behavior will bring the care they need."  DSM IV (4th ed. 2000) at 722.  Similarly, the Mayo Clinic website provides that individuals with a dependent personality disorder show excessive dependence and submissiveness toward others, including tolerance of poor or abusive treatment.  *See* http://www.mayoclinic.com/health/personality-disorders/DS00562/DSECTION=symptoms (visited 9/20/12).

REPORT AND RECOMMENDATION - 12

been generally quite candid about her history of marijuana use.  For example, she has admitted to her mental health counselors, and to the ALJ at the administrative hearing, that she used marijuana daily or almost daily for years.  Although plaintiff asserts that there is no evidence in the record that plaintiff has used marijuana after April 2009, she admits that she was still using marijuana as of August 2008, her alleged onset date.  For example, in February 2008, just six months before the alleged onset date, plaintiff expressed concern to her treating nurse that "her continued marijuana use is causing problems for her again.  Smoking daily.  Spouse agrees . . . Not attending to chores or self-care.  Just starts smoking marijuana after her husband leaves for work in the evenings."  AR at 249.  In August 2008, plaintiff reported smoking "less . . . about every other day."  AR at 276.  In March 2009, plaintiff reported still trying to taper her use.  AR at 436.

Although neither party addresses the issue, it appears that the ALJ should have conducted a drug abuse and alcoholism ("DAA") analysis because drug abuse was implicated in this case.  When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability.  *See* 20 C.F.R. 404.1535(a), 416.935(a).  *See also* 42 U.S.C. § 423(d)(2)(C) (a claimant is not entitled to disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."); 20 C.F.R. §§ 404.1535, 416.935 ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."; the "key factor" in this determination is whether an individual would still be found disabled if he or she stopped using drugs or alcohol).  It is error for an ALJ to conclude that DAA precludes

REPORT AND RECOMMENDATION - 13

1  an award of benefits prior to applying the five-step sequential process to determine whether the

2  claimant is disabled. *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001).

3         In this case, there is medical evidence of marijuana abuse during the relevant period, as

4  well as plaintiff's own admissions.  The ALJ did not find plaintiff's substance abuse to be a

5  severe impairment at step two, and yet found plaintiff less than credible because her persistent

6  marijuana use "further impaired her," and was allegedly responsible for many of her mental

7  health symptoms during the relevant period.[4]

8         Accordingly, on remand, if the ALJ believes that plaintiff's marijuana use is a potential

9  basis for conclusion that plaintiff is not entitled to benefits, plaintiff's marijuana use during the

10  relevant period should be discussed in greater detail at step two.  If the ALJ believes that a

11  DAA is appropriate, then an analysis should also be included.  In the absence of a DAA

12  analysis, the Court does not find plaintiff's marijuana use to be a clear and convincing reason

13  for finding plaintiff less than credible.

                            *5.*    *Inconsistent Statements*

14

15         Finally, the ALJ asserted that "there is evidence in the record that the claimant has not

16  been entirely forthcoming regarding the extent of her symptoms.  For example, while the

17  claimant initially reported that she walked off her last job due to bipolar/depressive symptoms,

18  she later reported that it was because her employer changed her schedule."  AR at 24.

19  Specifically, the ALJ appears to have been referring to plaintiff's testimony at the hearing that

20  she left her last job at Walmart because "[i]t got to, like, Christmas time and it was just just

21  (sic) so many people and it was kind of like overwhelming."  AR at 40.  Plaintiff further

22

23      [4]  The Commissioner mistakenly argues that the ALJ rejected plaintiff's testimony
because she was "not forthcoming" with Dr. Dixon about the extent of her past drug use.  Dkt.

24  14 at 6-7.  However, the ALJ's written decision does not indicate that the ALJ rejected
plaintiff's testimony on that basis.  AR at 23-24.

1   explained at the hearing that she "wasn't able to concentrate really," and so she left voluntarily.

2   AR at 41.  The ALJ appears to have compared this testimony to plaintiff's August 2008

3   disability report, which provides that plaintiff stopped working at Walmart because her

4   employer changed her work schedule.  AR at 124.[5]

5       In evaluating plaintiff's testimony, the ALJ may consider "ordinary techniques of

6   credibility evaluation" including inconsistencies in a plaintiff's testimony or work record.

7   *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir.

8   1997).  In this instance, however, the Court agrees with plaintiff's argument that her treatment

9   notes reflect that her she did ultimately quit her job at Walmart due to her bipolar/depressive

10  symptoms, which would have been further aggravated by a change in her routine.

11      Specifically, plaintiff's treatment notes reflect that she quit her job in July 2007 when

12  her new supervisor "wanted to rotate everybody through shifts," which would destabilize

13  plaintiff's routine and risk a relapse of her of her bipolar/depressive symptoms.  AR at 359.

14  Plaintiff's treatment notes also reflect that she was feeling overwhelmed by her job, and was

15  struggling with her symptoms, in the months immediately leading up to her decision to quit.

16  Plaintiff first reported being overwhelmed with her job in April 2007, when her hours began

17  increasing.  AR at 323, 330.  In late April she reported that she began missing work and "fears

18  she will lose her job because they have already had to be very accommodating for her mental

19  illness."  AR at 334.  In May 2007, she reported that she was so overwhelmed that she told her

20  bosses that she needed to quit, and they asked her to take a medical leave instead.  AR at 338.

21  _____

22      [5] The Commissioner fails to address this specific issue in his brief, but instead focuses
    on other allegedly inconsistent statements made by the plaintiff that the ALJ did not discuss in
23  her written decision.  *See* Dkt. 14 at 5-9.  However, the Court is "constrained to review the
    reasons the ALJ asserts," and cannot affirm the Commissioner on a ground that the agency did
24  not invoke in making its decision.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).
    *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

REPORT AND RECOMMENDATION - 15

She ultimately quit her job in late July 2007, and her treatment notes reflect that she did so because her "new supervisor wanted to rotate everybody through shifts.  Tammie did not want to risk destabilizing her routine and risk relapse.  Planning to look for new work right away." AR at 359.

Thus, plaintiff's treatment notes corroborate her statement in her August 2008 disability report that plaintiff stopped working at Walmart in July 2007 because her employer changed her work schedule, and also indicate that plaintiff was not necessarily being inconsistent during the hearing when she stated that her decision to quit was caused by her bipolar/depressive symptoms.  AR at 124.  Although plaintiff mistakenly stated during the hearing that she quit around Christmas, the Court agrees with plaintiff that this mistake alone was not a clear and convincing reason to reject plaintiff's testimony as a whole.  *See* Dkt. 10 at 15.

Accordingly, the Court finds that the ALJ has failed to provide clear and convincing reasons for discounting plaintiff's credibility.  On remand, the ALJ is directed to reassess plaintiff's credibility in light of the direction provided by this opinion.

B.      The ALJ Erred by Discounting Evidence from "Other Sources."

1.      *Legal Standard*

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-medical sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and

1  evaluation functions previously handled primarily by physicians and psychologists," their

2  opinions "should be evaluated on key issues such as impairment severity and functional effects,

3  along with the other relevant evidence in the file.").[5]  If an ALJ chooses to discount testimony of

4  a lay witness, he must provide "reasons that are germane to each witness," and may not simply

5  categorically discredit the testimony.  *Dodrill*, 12 F.3d at 919.

6        2.    *Scott MacHaffie, MN, ARNP*

7        In April 2009, plaintiff's treating therapist, Scott MacHaffie, MN, ARNP, opined that

8  plaintiff had marked limitations in her ability to complete a normal workday and workweek

9  without interruptions from psychologically based symptoms and to perform at a consistent

10  pace without an unreasonable number and length of rest periods.  AR at 376.  He also found

11  that plaintiff had moderate limitations in the following areas: plaintiff's ability to remember

12  locations and work-like procedures; understand, remember, and carry out detailed instructions;

13  perform activities within a schedule, maintain regular attendance, and be punctual within

14  customary tolerances; and sustain an ordinary routine without special supervision.  AR at 375-

15  76.  Mr. MacHaffie concluded that "[b]ased on my contacts with her over the past two years I

16  am not confident that Tammie can return to the work force in any reliable way for the

17  foreseeable future.  The stress of work itself is a risk factor for her destabilization."  AR at 379.

18  He noted that although "her symptoms may be manageable for several months at a time . . .

19  they are likely to recur, even with good medication management, and lead to her termination in

20  a job or her simply becoming too ill to continue working again."  AR at 379.

21

22        [5] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute
Social Security Administration (SSA) interpretations of the statute it administers and of its own
regulations," and are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v.
Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given
deference by the courts "unless they are plainly erroneous or inconsistent with the Act or
regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

23

24

REPORT AND RECOMMENDATION - 17

The ALJ considered Mr. MacHaffie's opinion, but did "not find it consistent with his own clinical notes or the record as a whole." AR at 25. The ALJ pointed out that Mr. MacHaffie "detailed the ordeal of the claimant's grandchildren, ending his summary by stating that they were 'placed in foster care,' but neglects to mention that the claimant herself is their foster parent and is caring for the three young children." AR at 25. The ALJ asserted that Mr. MacHaffie "further concludes that, even if the familiar chaos were to stabilize, the claimant would become depressed without the presence of her children in the home. This is inconsistent with numerous opinions in the record, including the claimant's own assessment. As noted above, the claimant believed that 'if there were nobody living in her household besides her spouse and herself she would be feeling and functioning quite well.'" AR at 25. Finally, the ALJ pointed to Mr. MacHattie's March 2009 statement that reduction of the chaos in the household was "likely the most important factor contributing to [the claimant's] fragility/discomfort at the present time." AR at 25. Thus, the ALJ did not find Mr. MacHattie's opinion persuasive.

Plaintiff contends that the ALJ's finding is not supported by substantial evidence, because the ALJ bases her conclusion on plaintiff's statement in September 2008 that if she and her spouse lived alone she would be feeling and functioning quite well, as well as Mr. MacHaffie's March 2009 recommendation that plaintiff try to reduce her symptoms by reducing the chaos in the household. Dkt. 10 at 18 (citing AR at 24). Plaintiff contends that "this line of reasoning ignores Plaintiff's diagnosis of a dependent personality disorder, which was adopted by the ALJ." *Id.* (citing AR at 19). The Commissioner responds that "the ALJ gave more than one germane reason to discount Mr. MacHaffie's opinion that Plaintiff was disabled and could not work, which are, in any event, opinions on issues reserved to the Commissioner." Dkt. 14 at 17.

REPORT AND RECOMMENDATION - 18

As discussed above with respect to the ALJ's credibility assessment, the Court does not consider the ALJ's assumption that if only plaintiff's children and grandchildren were removed from her home, plaintiff's depressive and bipolar symptoms would improve dramatically, clear and convincing.  However, clear and convincing reasons are not required for an ALJ to discount the opinion of Mr. MacHaffie, a nurse.  The ALJ correctly noted that Mr. MacHaffie's April 2009 assessment "detailed the ordeal of the claimant's grandchildren," but failed to include relevant information, such as the fact that plaintiff had agreed to serve as their foster parent in the future.  The ALJ also found Mr. MacHaffie's opinion "inconsistent with numerous opinions in the record, including the claimant's own assessment" of her ability to remain mentally stable if her grown children and grandchildren no longer lived with her.  These were germane reasons for the ALJ to afford Mr. MacHaffie's opinion less weight.

Accordingly, the Court finds that the ALJ properly provided several "reasons that are germane" to Mr. MacHaffie for discounting his opinion.  The ALJ did not categorically discredit his testimony.  *See Dodrill,* 12 F.3d at 919.

### 3.    *Beverly Geogianna, MN, ARNP*

In her written decision, the ALJ failed to address the opinion of Beverly Georgianna, MN, ARNP, who treated plaintiff at Veridian Associates, LCC, following Mr. MacHaffie from January 2010 through March 2010.  AR at 386-98.  Specifically, Ms. Georgianna completed a medical source statement in April 2010 providing that plaintiff would have marked to extreme problems interacting appropriately with the public, supervisors or co-workers, and responding appropriately to usual work situation and change in a routine work setting.  AR at 439.  She also indicated that plaintiff would have marked to extreme problems understanding, remembering, and carrying out complex instructions.  AR at 439.  In her handwritten comments, she noted that plaintiff "has periods of extreme fatigue that make it very difficult to

REPORT AND RECOMMENDATION - 19

concentrate.  She becomes easily frustrated and agitated, she becomes easily anxious and overwhelmed, and is unable to be around large groups of people."  AR at 439.

Plaintiff contends that the ALJ's failure to address Ms. Georgianna's opinion was not harmless, and appears to anticipate that the Commissioner will argue that the reasons provided by the ALJ for rejecting Mr. MacHaffie's opinions were equally applicable to Ms. Georgiana's opinions. Dkt. 10 at 19 (*citing Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (holding that if an ALJ fails to provide any reasons for rejecting lay witness testimony, but properly rejects the claimant's testimony or other lay testimony that is similar to the lay testimony in question, the error can be found harmless).  Plaintiff asserts that Ms. Georgianna's opinion "is not similar to other evidence considered by the ALJ.  It was offered at a different time than Mr. MacHaffie's opinion.  Indeed, when she saw Plaintiff, her adult children had been removed from the home, yet Ms. Georgianna continued to note Plaintiff's problems."  *Id.*

The Commissioner asserts that Ms. Georgianna did not treat plaintiff until over six months past her date last insured, and therefore argues that Ms. Georgianna's opinion did not constitute "significant probative evidence" that the ALJ must explicitly discuss in the written decision. Dkt. 14 at 19.  The Commissioner also claims that the ALJ's RFC already accounts for the limitations highlighted by Ms. Georgianna's opinion.  *See id.* at 20.

The Court cannot agree with the Commissioner, however, that the ALJ's failure to discuss Ms. Georgianna's opinion was inconsequential to the ultimate disability analysis.  As discussed above, the ALJ inaccurately implied that plaintiff's GAF scores rose to 61 as soon as her adult children moved out of her home and remained high thereafter.  The ALJ cited plaintiff's GAF score of 61 as evidence showing that plaintiff's symptoms were primarily caused by temporary situational stressors during the relevant period.  AR at 24.  In fact, Ms. Georgianna's treatment notes reflect that plaintiff's GAF scores only rose temporarily, and

REPORT AND RECOMMENDATION - 20

1   then reflected marked limitations in functioning between January and March 2010 despite the

2   fact that plaintiff's adult children had moved out of her home.  AR at 386-98.  In light of the

3   fact that Ms. Georgianna's treatment notes provide evidence that potentially undercuts a

4   significant aspect of the ALJ's credibility analysis, the Court cannot find the ALJ's failure to

5   discuss Ms. Goergianna's opinion to be harmless.

6        Accordingly, the Court finds that the ALJ erred when she did not discuss the opinion of

7   Ms. Georgianna.  On remand, the ALJ is directed to reeevalute the opinion of Ms. Georgianna,

8   and provide adequate reasons for discounting her opinion, if appropriate.

9   VIII.   CONCLUSION

10       For the foregoing reasons, the Court recommends that this case be REVERSED and

11  REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

12  instructions.  A proposed order accompanies this Report and Recommendation.

13       DATED this 24th day of September, 2012.

14

15                  _____

16                  JAMES P. DONOHUE
                    United States Magistrate Judge

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 21